**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **KESHEL S. COATES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:25-cv-402 (MTT)** |
| | ) | |
| **ROMAN CATHOLIC DIOCESE OF** | ) | |
| **SAVANNAH, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## ORDER

In her nine-count amended complaint, Plaintiff Keshel S. Coates, proceeding pro se, asserts numerous claims relating to her employment as a first-grade teacher at St. Peter Clavar Catholic School (SPCCS) and the non-renewal of her employment contract. ECF 22 at 46–90. SPCCS is a private Catholic school. *Id.* ¶¶ 99, 101. Coates is an African American woman who is not Catholic and finds Catholicism "offensive."[1] *Id.* ¶¶ 8, 63, 106. Coates asserts claims for, among other things, employment discrimination based on race and religion and various constitutional deprivations under 42 U.S.C. § 1983. Defendants move to dismiss Coates' employment discrimination and § 1983 claims. ECF 24. For the reasons explained below, Defendants' motion is **GRANTED in part** and **DENIED in part** without prejudice.

---

[1] Coates does not explain why, given her low opinion of The Catholic Church, she sought employment at a Catholic school. *See* ECF 22.

## I.   BACKGROUND[2]

SPCCS is an accredited private, non-profit Catholic school in Macon, Georgia. ECF 22 ¶¶ 99, 101, 195. In 2022, Defendant Sister Cheryl Hillig, the principal and administrator of SPCCS, invited Coates to interview for a first-grade teacher position at the school. *Id.* ¶¶ 17, 18, 104. During the interview, Hillig informed Coates that she would need to escort her class to Mass every Wednesday to monitor behavior. *Id.* ¶ 22. Coates then "stopped the interview to inform [Hillig] that she was not a Catholic and would not worship as a Catholic or accept an offer of employment if she had to worship or participate in Catholic doctrine or worship services."[3] *Id.* ¶ 23. Hillig responded, "[w]e believe in the same thing but worship differently" and reassured Coates, "[t]hat's okay. Sis. Kate McFall is responsible for teaching religious instruction. Your responsibility is to take the students to Mass on Wednesday." *Id.* ¶¶ 11, 24.

Even so, each academic year of her employment, Coates signed work agreements that contained a "Statement of Purpose" explaining that employment was "expressly conditioned upon the Teacher's adherence to the doctrines, beliefs and tenets of the Catholic Faith, at all times," and contained an acknowledgment that "the teaching position is Ministerial." *Id.* ¶ 4; ECF 22-1 at 2, 4; ECF 22-2 at 2, 4. The work agreements also provided that teachers would serve as "a Catholic role model, both inside and outside the classroom, regardless of his/her personal beliefs or different religious affiliation." ECF 22-1 at 4; ECF 22-2 at 4. SPCCS also evaluates teachers on

---

[2] The Court takes the following facts from the well-pleaded allegations in the amended complaint and its attachments, construing all reasonable inferences in the light most favorable to Plaintiff. *See FindWhat Inv'r Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011).

[3] Coates also alleges she has no formal credentials pertaining to Catholic ministry nor any personal knowledge of the Catholic faith. ECF 22 ¶ 19.

how well they served as a role model of faith and service and how well they incorporated Catholic values and teachings into instructional practices. ECF 22-1 at 9–10; ECF 22-2 at 9–10. Based on an alleged conversation with Hillig, however, Coates says she believed these contractual statements only applied to adherents of the Catholic faith. *Id.* ¶¶ 9, 11, 27, 33.

After accepting the position, Coates taught a variety of subjects to first graders and kindergarteners, including reading, science, and social studies. *Id.* ¶ 19. As promised, another teacher swapped classes with Coates to teach religion. *Id.* ¶ 21. Coates was responsible for accompanying students to Mass to ensure safety and monitor behavior, but Coates never led the students in prayer or Catholic worship activities. *Id.* ¶¶ 22, 53. On at least one occasion, Hillig asked Coates to participate in a religious service. *Id.* ¶¶ 89, 244; ECF 22-4 at 2. Specifically, in February 2024, Hillig sent out a faculty-wide email stating that "everyone is expected to receive Ashes, Catholic or not, as an outward sign of our own humanity." *Id.* It is unclear whether Coates complied with Hillig's directive.[4] Otherwise, during her two years of employment at SPCCS, Coates did not participate in SPCCS' "religion or its religious rituals and activities." *Id.* ¶¶ 29, 30. Yet, Coates received positive performance reviews, and "her non-participation was accepted without discipline or reprimand." *Id.* ¶¶ 29, 30, 111.[5]

---

[4] *Compare* ECF 22 ¶¶ 89 ("Defendants were prohibited in forcing Ms. Coates participate in a Catholic worship religious service . . . . These obligations were against her will.") *with id.* ¶¶ 30, 245, 251 (suggesting Coates refused to comply).

[5] Later Coates alleges, her "refusal to comply resulted in religious retaliation and eventually termination." ECF 22 ¶ 245. She also alleges "[o]ver time, Defendants attempted in pressuring to force Plaintiff to participate, recite Catholic prayers, and model Catholic devotion in class, contrary to her stated beliefs through its contracts." *Id.* ¶ 154. Construing the complaint in the light most favorable to Coates, the Court will accept Coates' statement that her non-participation was accepted without discipline or reprimand as a pleading in the alternative. *Id.* ¶ 111.

In April 2024, Coates provided a statement to the police concerning an incident involving another SPCCS teacher, Elizabeth Milam, and a student. *Id.* ¶¶ 40, 63. Coates also informed the student's parents of the incident. *Id.* ¶ 40. After a police investigation resulted in simple assault charges against Milam, Hillig, and Defendant Carrie Jane Williamson, the school superintendent for the Roman Catholic Diocese of Savannah, confronted Coates about her involvement in the police investigation. *Id.* ¶¶ 41, 63, 102. They asked Coates why parents were informed of the incident. *Id.* ¶ 40. Williamson also accused Coates of harboring ill will toward Milam. *Id.* ¶ 41. Coates alleges that following her involvement in the police investigation, Defendants subjected her to increased scrutiny and fabricated allegations of tardiness and other minor infractions. *Id.* ¶ 113. Meanwhile, Milam, who was white, received no reprimand. *Id.* ¶ 65

On May 29, 2024, Hillig informed Coates that SPCCS did not intend to renew Coates' contract. *Id.* ¶ 43. The stated reason for the non-renewal was that "Ms. Coates did not fully participate in the religious aspects of [the] program as was stated upon hiring that needed to be done." *Id.* ¶ 31.

## II.  STANDARD

To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp.*, 658 F.3d at 1296 (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Moreover, pleadings by pro se litigants "are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003) (citation modified). Even so, "the district court does not have license to rewrite a deficient pleading." *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (citation omitted). Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts. *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018).

### III. DISCUSSION

Coates' ninety-page amended complaint is far too long and confusing. ECF 22. The Defendants' cursory ten-page brief makes no effort to figure out the amended complaint's confusing claims. ECF 24. Defendants did not file a reply brief. The parties leave it to the Court to sort Coates' claims.

As best the Court can tell, the amended complaint asserts the following nine counts against all defendants—SPCCS, the Roman Catholic Diocese of Savannah

("RCDS"), Hillig, and Williamson.[6] Count I asserts a race discrimination claim under Title VII and 42 U.S.C. § 1981. ECF 22 ¶¶ 124–38. Count II asserts a retaliation claim based on "oppos[ing] race discrimination and participat[ing] in a police investigation involving workplace misconduct" under Title VII and § 1981. *Id.* ¶¶ 139–48. Count III asserts a claim for religious retaliation and failure to accommodate under Title VII and § 1981. *Id.* ¶¶ 149–65. Count IV asserts a breach of contract and wrongful termination claim under Georgia law. *Id.* ¶¶ 166–83. Count V asserts a Free Exercise claim under the First Amendment via 42 U.S.C. § 1983. *Id.* ¶¶ 184– 201. Count VI asserts an Equal Protection claim under the Fourteenth Amendment via § 1983 and race discrimination under § 1981. *Id.* ¶¶ 202–14. Count VII asserts a claim for religious coercion and abuse of the ministerial exception under Title VII, § 1981, § 1983, and Georgia law. *Id.* ¶¶ 215– 228. Count VIII asserts a claim for "retaliation for participation in protected activity (police investigation)" (capitalization removed) allegedly arising under Title VII and § 1981. *Id.* ¶¶ 229–40. Count IX is titled "religious harassment and hostile work environment," (capitalization removed) allegedly arising under Title VII, § 1981, § 1983, and Georgia law. *Id.* ¶¶ 241–68.

Defendants' brief, without addressing specific counts, only argues that the First Amendment's ministerial exception bars Coates' employment discrimination claims under Title VII and § 1981 and that Coates' § 1983 claims are barred because Defendants are not state actors. ECF 24-1 at 5–10. Defendants also incorporate by reference an argument raised in their initial motion to dismiss that Title VII does not

---

[6] Coates asserts Title VII claims against Hillig and Williamson in their "official capacities." ECF 22 ¶¶ 134, 147, 161, 225, 238. Coates does not apparently assert the Title VII claim raised in Count IX against Hillig and Williamson in any capacity, however. *Id.* ¶ 261.

apply to claims for employment discrimination based on religion against religious institutions. *Id.* at 8 n.2; ECF 7-1 at 13–16. Defendants do not move to dismiss Coates' breach of contract or wrongful termination claim under Georgia law. *See* ECF 24-1. Defendants do not argue that individual defendants cannot be liable under Title VII. *Id.* Defendants do not specifically address Coates' retaliation claim based on participation in a police investigation. *Id.* Had Defendants moved to dismiss those claims for failure to state a claim and properly briefed it, that may have narrowed those claims.

## A. Title VII Claims for Religious Discrimination

Counts III, VII, and IX assert, among other things, Title VII claims for discrimination in employment based on religion. ECF 22 ¶¶ 149–65, 215–28, 241–68. Coates' Title VII claims based on religious discrimination are barred by Title VII's express language exempting from its antidiscrimination provisions "a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1(a); *see also Corporation of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints v. Amos,* 483 U.S. 327, 329 (1987) (Title VII "exempts religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion"); *Killinger v. Samford Univ.*, 113 F.3d 196, 200 (11th Cir. 1997) ("[T]he exemption allows religious institutions to employ only persons whose beliefs are consistent with the employer's when the work is connected with carrying out the institution's activities.").

Coates alleges SPCCS is a religious institution. ECF 22 ¶ 99. Thus, Title VII permits SPCCS to discriminate in employment on the basis of religion for work connected to the institution's activities, such as education. *See* 42 U.S.C. § 2000e-1(a).

Accordingly, Coates' Title VII claims for discrimination in employment on the basis of religion, raised in Counts III, VII, and IX, are **DISMISSED**.

## B. The Ministerial Exception

Counts I, II, and VI assert, among other things, claims for employment discrimination and retaliation based on race under Title VII and/or 42 U.S.C. § 1981. ECF 22 ¶¶ 124–38, 139–48, 202–14. Defendants move to dismiss Coates' employment discrimination claims based on race and religion pursuant to the First Amendment's ministerial exception. ECF 24 at 8–11.

The ministerial exception forecloses "certain employment discrimination claims brought against religious organizations." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 591 U.S. 732, 747 (2020). Grounded in the First Amendment's Religion Clauses, the ministerial exception recognizes that "courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions." *Id.* at 746; *see also Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S 171, 181 (2012) ("Both Religion Clauses bar the government from interfering with the decision of a religious group to fire one of its ministers"). The ministerial exception often extends to bar employment discrimination claims brought by teachers at religious schools because "[t]he religious education and formation of students is the very reason for the existence of most private religious schools, and therefore the selection and supervision of the students upon whom the schools rely to

-8-

do this work lie at the very core of their mission." *See Our Lady of Guadalupe*, 591 U.S. at 738.[7] Even so, teachers at religious schools are not deemed ministers simply because they teach at a religious institution. Courts must instead, "take all relevant circumstances into account and [] determine whether each particular position implicate[s] the fundamental purpose of the exception." *Id.* at 758. "What matters, at bottom, is what an employee does." *Id.* at 753.[8]

Applying that test here, the amended complaint plausibly alleges Coates did not serve a ministerial function at SPCCS. Coates alleges that before her employment with SPCCS even began, Coates told Hillig she was not Catholic and would not accept employment if it would require her to "participate in Catholic doctrine or worship services." *Id.* ¶ 23. Hillig responded by assuring Coates that religious instruction would not be her responsibility and that she would only need to escort the students to Mass on Wednesdays and monitor behavior. *Id.* ¶¶ 11, 27. During Coates' employment, Coates did not teach religion or lead students in worship or prayer. *Id.* ¶¶ 19, 21, 53. Nor did she participate in "Catholic worship or practices." *Id.* ¶ 111. Yet, Coates received positive performance reviews, and SPCCS accepted Coates' non-participation without

---

[7] To the extent Coates suggests the First Amendment's ministerial exception does not extend to employment discrimination beyond discrimination based on religion, that contention is wrong. *See Hosanna-Tabor*, 565 U.S at 180, 196 (holding the ministerial exception barred a suit under the ADA); *Our Lady of Guadalupe*, 591 U.S. at 742, 745, 756 (holding the ministerial exception barred suits under the ADEA and ADA).

[8] Coates argues the Court should consider whether, under Catholic Canon Law, SPCCS could hire a non-Catholic to serve as a minister. ECF 30 at 5. Determining whether Coates was qualified to serve as a minister under Catholic Canon Law is precisely the type of ecclesiastical question courts are not permitted to adjudicate under the First Amendment. *See Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 720 (1976) (holding that by inquiring into whether a church had followed its own procedures, a state supreme court had "unconstitutionally undertaken the resolution of quintessentially religious controversies"); *see generally, Hosanna-Tabor*, 565 U.S at 180–89 (describing the history and purpose of the Establishment Clause).

reprimand. *Id.* ¶¶ 29, 30, 111. In short, Coates has plausibly alleged that SPCCS hired Coates, knowing she was not Catholic, to perform secular duties.

To be sure, the complaint also alleges facts suggesting Coates may have served a ministerial role at SPCCS. Coates signed an employment contract designating her role as "ministerial" and requiring her to model the Catholic faith regardless of religion. *Id.* ¶ 4; ECF 22-1 at 2, 4; ECF 22-2 at 2, 4. SPCCS also evaluated Coates' performance as a model of the faith in her teacher evaluations and requested that Coates participate in an Ash Wednesday service at the school. ECF 22 ¶ 244; ECF 22-1 at 9–10; ECF 22-2 at 9–10; ECF 22-4 at 2. Still, on a motion to dismiss, Coates' need only *plausibly* allege she served a non-ministerial function. *See Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) ("Plausibly does not mean probably, but it asks for more than a sheer possibility." (citation modified)). And Coates has alleged facts making it plausible that she did not perform a ministerial function at SPCCS. Namely, Coates has alleged facts suggesting that, despite SPCCS' formal designation of Coates' position as ministerial, SPCCS did not actually expect Coates to perform ministerial functions at the school, and that when Coates did not integrate Catholicism into her work, SPCCS accepted Coates until she participated in a police investigation against another teacher. Perhaps, as discovery develops, the undisputed facts will show that SPCCS, like most religious schools, has a sincere mission to promote religious education, and that Coates, even as a non-Catholic, served a vital role in that mission. But because the amended complaint asserts facts plausibly alleging that Coates' position was non-ministerial, Defendants' motion to dismiss her

employment claims on the basis of the ministerial exception is **DENIED** without prejudice.

### C. Section 1983

Counts V, VI, VII, and IX assert, among other things, 42 U.S.C. § 1983 claims for violations of the First and Fourteenth Amendments. ECF 22 ¶¶ 184–201, 202–14, 215–28, 241–68. But the First and Fourteenth Amendments "do not apply to private parties unless those parties are engaged in activity deemed to be 'state action.'" *Farese v. Scherer*, 342 F.3d 1223, 1233 n.13 (11th Cir. 2003) (quoting *NBC, Inc. v. Comms. Workers of Am.*, 860 F.2d 1022, 1024 (11th Cir. 1988)); *see also Rendell-Baker v. Kohn,* 457 U.S. 830, 837 (1982). Similarly, § 1983 "prohibits interference with federal rights under color of state law." *Rendell-Baker,* 457 U.S. at 837; *see also Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003) ("the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (citation modified).

Under United States Supreme Court precedents, "a private entity can qualify as a state actor in a few limited circumstances." *See Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019) (explaining a private entity can qualify, for example, "when the private entity performs a traditional, exclusive public function," "when the government compels the private entity to take a particular action," or "when the government acts jointly with the private entity") (collecting cases). Importantly, "the character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of the law to acknowledge the entity's inseparability from recognized government officials or agencies." *Brentwood Acad. v. Tennessee*

*Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). Rather, "state action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Id.* at 295 (citation modified); *see also Rendell-Baker,* 457 U.S. at 838 ("The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'" (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982))).[9]

The amended complaint does not plausibly allege that Defendants' actions are fairly attributable to the state. The amended complaint alleges SPCCS receives federal funding benefits. ECF 22 ¶ 224. But it does not allege how much, and in any case, receipt of public funds is not alone enough to convert private action into state action. *Id.* ¶ 67; *Rendell-Baker,* 457 U.S. at 840 (A "school's receipt of public funds does not make the discharge decisions acts of the State."). Coates argues Defendants acted under color of state law because they were subject to "[s]tate-regulated educational authority" and "[a]ccreditation and oversight" and because they participated "in government-regulated employment systems" and chose to be "governed by Georgia laws." ECF 30 at 12. But so is almost any private school in Georgia. Coates has not plausibly alleged that by virtue of operating an accredited private school in Georgia, Defendants' nominally private actions are fairly attributable to the State.

---

[9] Coates argues the state action inquiry "can be a mixed question of law and fact inappropriate for resolution on a motion to dismiss," citing *Lugar*, 457 U.S. at 939. ECF 30 at 12. While *Lugar* describes the state action inquiry as "necessarily fact-bound," it nowhere advises courts to withhold judgment on a motion to dismiss in the absence of facts plausibly alleging state action. *Lugar*, 457 U.S. at 939*; see also, e.g., Manhattan Cmty. Access Corp.*, 587 U.S. at 806, 818 (holding a private nonprofit corporation was not a state actor based on a complaint's factual allegations).

Accordingly, Coates' § 1983 claims are **DISMISSED** without prejudice.

### IV. CONCLUSION

Defendants' motion to dismiss (ECF 24) is **GRANTED in part** and **DENIED in part** without prejudice.

Coates' Title VII claims for employment discrimination on the basis of religion, raised in Counts III, VII, and IX, are **DISMISSED** without prejudice.

The ministerial exception does not, at this juncture, bar Coates' remaining employment discrimination claims.

Coates' § 1983 claims, raised in Counts V, VI, VII, and IX, are **DISMISSED** without prejudice.

**SO ORDERED**, this 6th day of April, 2026.

<u>S/ Marc T. Treadwell</u>
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT